IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FORD, BACON & DAVIS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-2911 |
| | § | |
| THE TRAVELERS INSURANCE | § | |
| COMPANY, TRAVELERS CASUALTY | § | |
| AND SURETY COMPANY, and | § | |
| TRAVELERS CASUALTY AND SURETY | § | |
| COMPANY OF AMERICA, | § | |
| | § | |
| Defendants. | § | |

<u>MEMORANDUM AND ORDER</u>

Pending is Defendants The Travelers Indemnity Company,[1] Travelers Casualty and Surety Company, and Travelers Casualty and Surety Company of America's Motion for Summary Judgment and Brief in Support (Document No. 13). After carefully considering the motion, response, reply, and the applicable law, the Court concludes for the reasons that follow that the motion should be granted.

---

[1] Defendants represent that any liabilities for any alleged policies at issue in this case which may have been issued by The Travelers Insurance Company, which Plaintiff named as a Defendant, are now held by the Travelers Indemnity Company, and that no entity now exist by the name of "The Travelers Insurance Company." Document No. 4, at 2 n.1.

I.  <u>Background</u>

In this insurance coverage dispute, Plaintiff Ford, Bacon & Davis, LLC ("FBD, LLC") seeks a declaration that Defendants The Travelers Indemnity Company, Travelers Casualty and Surety Company, and Travelers Casualty and Surety Company of America (collectively, "Travelers") owe it a defense against a series of underlying asbestos products-liability lawsuits, and further seeks compensation of costs already incurred in defending the underlying lawsuits.[2]  It is undisputed that FBD, LLC is not a named insured on any relevant policy issued by Travelers.[3]  Nonetheless, FBD, LLC asserts that Travelers' obligation to defend it "finds its source in the commercial general liability insurance policies issued by Travelers to FBD, LLC's alleged predecessor."[4]

FBD, LLC acquired "the goodwill and certain assets" of Ford, Bacon & Davis, Inc. and its subsidiaries ("FBD, Inc.") pursuant to an Asset Purchase Agreement dated November 19, 1996.[5]  Under the Agreement, FBD, Inc. sold certain assets, including the right to

---

[2] Document No. 1, ex. B at 6-7.  FBD, LLC points to 17 state court lawsuits in which it is a named defendant regarding alleged asbestos exposure; 14 were filed in West Virginia and three in Texas.  <u>Id.</u>, ex. B at 4-5.

[3] Document No. 24 at 1; Document No. 28 at 1.

[4] Document No. 24 at 1.

[5] <u>Id.</u> at 2; Document No. 25, ex. A-1 (hereinafter the "Asset Purchase Agreement").

use its name, to S&B Acquisition L.L.C., which subsequently became known as FBD, LLC.[6]  The entity formerly known as FBD, Inc. changed its name to SFB Companies, Inc. ("SFB").[7]  The assets transferred included:

> [A]ssets, properties and rights . . . of the engineering, procurement and construction business of [FBD, Inc.] . . . from [FBD, Inc.'s] facilities (the "Monroe Facilities") at 4001 Jackson Street, Monroe, Louisiana (the "Business"), free and clear of all mortgages, liens, pledges, claims, security interests or encumbrances of any nature whatsoever except Permitted Liens . . . .[8]

The transfer explicitly excluded "all policies of insurance relating to the Business or the Assets or any rights thereunder, except limited rights to certain claims [relating to damaged assets not repaired or replaced prior to the transfer]."[9]

FBD, LLC also assumed certain liabilities under the Agreement. However, the Agreement expressly excluded the transfer to FBD, LLC of pre-sale liabilities not expressly listed therein.[10]  It is undisputed that any liability arising from FBD, Inc.'s (later SFB)

---

[6] Document No. 13 at 3 & n.7; id., ex. A-7; Asset Purchase Agreement at 42.  For the sake of simplicity, the Court will refer to the entity known as S&B Acquisition L.L.C. at the time of the Asset Purchase Agreement as FBD, LLC.

[7] Document No. 13 at 1; Asset Purchase Agreement at 42.

[8] Asset Purchase Agreement at 1.

[9] Id. at 3, 5.

[10] Id. at 6-7.

pre-sale production of asbestos was not transferred to FBD, LLC in the Agreement.[11]   Moreover, FBD, Inc. agreed to indemnify and hold harmless FBD, LLC from and against, "any claim, loss, liability, cost, expense or damage, including reasonable legal fees and expenses" arising from several acts, including:

> [A]ny action, suit or proceeding now pending or instituted against [FBD, Inc.] prior to or after the Closing arising out of matters which occurred in connection with the conduct of the Business by [FBD, Inc.] prior to the Closing . . . .[12]

Indeed, according to FBD, LLC's general counsel, for several years after the transfer, SFB's attorney would write letters to plaintiffs in asbestos litigation brought against FBD, LLC to inform them that SFB retained liability for any claims arising from pre-sale activities.[13]   The claims against FBD, LLC would be dismissed, and SFB would be added as the proper defendant.[14]

Starting in 2005, FBD, LLC's general counsel was and continues to be unable to locate any individual who represents SFB.[15] According to Travelers, SFB has been dissolved.[16]   With the demise

---

[11] Id.; Document No. 13 at 4; Document No. 24 at 4.

[12] Asset Purchase Agreement at 35.

[13] Document No. 24 at 4-5; id., ex. B at 2; id., ex. B-1.

[14] Id. at 5; id., ex. B at 2.

[15] Id., ex. B at 2.

[16] Document No. 13 at 12.

of SFB, there is no longer an SFB counsel to persuade plaintiffs to drop claims against FBD, LLC, and FBD, LLC no longer has a counterparty to call upon for its contracted-for indemnity. By letter dated February 9, 2007, FBD, LLC notified Travelers of the claims against it in the underlying suits and sought a defense against the claims.[17]

## II.   Discussion

FBD, LLC relies upon an "operation of law" theory of insurance coverage. Citing Northern Insurance Co. of N.Y. v. Allied Mutual Insurance Co., it contends that "the right to a defense transfers by 'operation of law' to a party alleged to be liable as the corporate successor of the insured,"[18] regardless of the assignment or non-assignment of the actual insurance policy. *See* Northern Ins., 955 F.2d 1353, 1357-58 (9th Cir. 1992). Travelers asserts that "whether insurance coverage can *ever* transfer by 'operation of law' is far from settled," but, even if that theory were accepted, it is inapplicable to the facts of this case.[19]

## A.   Summary Judgment Standard

Rule 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file,

---

[17] Document No. 24 at 9.

[18] Id. at 11.

[19] Document No. 13 at 7.

5

and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  Id.  "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden."  Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.  Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993).  On the other

hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id.  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

B.   Insurance Coverage by "Operation of Law"[20]

   1.   *Inapplicability of the "eight corners rule"*

   FBD, LLC asserts that the right to a defense by "operation of law" can be triggered merely by an allegation that an unrelated entity is a corporate successor to the insured entity for purposes of liability in an underlying lawsuit.[21]   For this argument it relies on the "eight corners rule," which provides that "an insurer's duty to defend is determined by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations." Zurich Am. Ins. Co. v. Nokia, Inc., 268 S.W.3d 487,

---

   [20] Both parties cite and evidently assume that Texas law applies.  The validity under Texas law of the "operation of law" theory of coverage, however, has not been determined by Texas appellate courts or, as of this date, by the Fifth Circuit.  Only one opinion applying Texas law has followed Northern Insurance, and that case is currently on appeal in the Fifth Circuit.  Keller Founds., Inc. v. Wausau Underwriters Ins. Co., No. SA-06-CA-606-JWP (W.D. Tex. Jan. 7, 2008), *on appeal*, No. 08-50253 (5th Cir. argued Dec. 4, 2008).

   [21] Document No. 24 at 19-21.

490 (Tex. 2008) (quoting <u>GuideOne Elite Ins. Co. v. Fielder Rd.
Baptist Church</u>, 197 S.W.3d 305, 308 (Tex. 2006)).

FBD, LLC's reliance on the eight corners rule is misplaced.
The eight corners rule determines whether a plaintiff's claims,
regardless of their merits, fall within the scope of an *insured's*
coverage. *See* 14 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE
§ 200:19 (3d ed. 2007). The "operation of law" theory of coverage,
however, bears upon a *preliminary* question of whether an entity not
named in the policy as an insured shall nonetheless be deemed as
an "insured" under the policy. These are quite different
inquiries. For example, in <u>Kaufman and Broad Home Corp. v.
Employers Mutual Casualty Co.</u>, the defendants in an underlying
lawsuit had similar names to, or alleged corporate association
with, the allegedly liable entity. No. 2-06-383-CV, 2008 WL
281530, at *1, *3 (Tex. App.--Fort Worth Jan. 31, 2008, no pet.).
The entity named on the relevant insurance policy, which provided
a right of defense, was "Kaufman & Broad Lone Star, L.P., dba
Kaufman & Broad of Dallas." <u>Id.</u> at *3. The other defendants
asserted they were entitled to the same right to defense because
the underlying plaintiffs did not distinguish between the
defendants who were named insureds and those were not in their
allegations of misconduct and because the underlying plaintiffs
alleged "alter ego, single business enterprise, and respondeat
superior." <u>Id.</u> The court rejected the contention:

8

> We recognize that application of the much-discussed
> "eight corners" rule requires that we give the
> allegations in the pleadings a liberal interpretation in
> favor of the insured. . . . However, a plain reading of
> the [insurance policy] does not include non-named
> entities, such as the other defendants in this matter, as
> insureds. . . . *The fact that one non-insured entity is
> purportedly sued for the actions of another insured
> entity does not magically metamorphose a non-insured into
> an insured*. This is a logic-challenged idea.

Id. (emphasis added and citation omitted). Thus, the eight corners rule may apply only if FBD, LLC shall have first been determined actually to be an "insured" under the policy. FBD, LLC, which is not a named insured, asserts that it qualifies as an "insured" under the policy by "operation of law."

2.   *Qualifying as an "insured" by "operation of law"*

In Northern Insurance, Brown-Forman had purchased "all of the assets" of California Cooler, excluding any contracts that required consent to assign. 955 F.2d at 1357. Brown-Forman was then sued by a third party based on California Cooler's pre-sale activities. This led to a question of whether Brown-Forman was entitled to a right to defense as an insured under California Cooler's insurance policy. Id. at 1356-57. The Ninth Circuit found that the relevant insurance policy was excluded from the transfer; the insurance policy required consent to assign, and at any rate the court found no intent by Brown-Forman and California Cooler to transfer the insurance policy. Id. at 1358. Nonetheless, it observed that

California and Washington both apply a rule of "product-line successor liability," whereby "a purchaser of substantially all assets of a firm assumes, with some limitations, the obligation for product liability claims arising from the selling firm's presale activities . . . irrespective of any clauses to the contrary in the asset purchase agreement." <u>Id.</u> at 1357. The question the Ninth Circuit then addressed was "whether the right to a defense [under the relevant insurance contract] also followed the liability." <u>Id.</u> The court held that it did.

> [T]he rationale for honoring "no assignment" clauses vanishes when liability arises from presale activity . . . . Insurers take account of the nature of the insured when issuing a policy. Risk characteristics of the insured determine whether the insurer will provide coverage, and at what rate. An assignment could alter drastically the insurer's exposure depending on the nature of the new insured. "No assignment" clauses protect against any such unforeseen increase in risk. When the loss occurs before the transfer, however, the characteristics of the successor are of little importance . . . .

<u>Id.</u> at 1358 (citations omitted). Central to the court's analysis is that "regardless of any transfer the insurer still covers only the risk it evaluated when it wrote the policy." <u>Id.</u>

Other courts applying this doctrine also have done so only when the entity seeking coverage actually is found to stand in place of its predecessor with respect to the underlying pre-sale liability. For example, when Magistrate Judge John W. Primomo of

the Western District of Texas recently applied <u>Northern Insurance</u>, he held:

> [A] corporation *which succeeds to liability* for pre-acquisition operations of another entity acquires rights of coverage applicable to *these assumed liabilities* by operation of law.

<u>Keller Founds., Inc. v. Wausau Underwriters Ins. Co.</u>, No. SA-06-CA-606-JWP, at 10 (W.D. Tex. Jan. 7, 2008), *on appeal*, No. 08-50253 (5th Cir. argued Dec. 4, 2008) (emphases added).  The court observed that the successor corporation "stands in the place" of the entity insured for the underlying pre-sale liability.  <u>Id.</u> at 12.

Indeed, courts have posited that the "operation of law" theory of coverage breaks down "when the original insured still exists or can be revived to demand a defense--a distinction not addressed in [<u>Northern Insurance</u>]."  <u>Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.</u>, 861 N.E.2d 121, 130 (Ohio 2006) (discussing <u>Henkel Corp. v. Hartford Acc. & Indemn. Co.</u>, 62 P.3d 69, 75 (Cal. 2003)).  "If both assignor and assignee were to claim the right to defense, the insurer might effectively be forced to undertake the burden of defending both parties."  <u>Henkel</u>, 62 P.3d at 75.  This would result in coverage of *more* than the initial risk contemplated, as multiple

coverage rights would have sprung from one--which undermines the rationale of National Insurance.[22]

Thus, the first question is whether FBD, LLC as a purchaser only of assets could *actually*, not just because it is alleged by unrelated third parties in their asbestos lawsuits, be held to stand in SFB's place as a potentially liable party in those underlying asbestos lawsuits.   Only if that is so would the question then arise whether Travelers's duty to defend its insured FBD, Inc., which was renamed SFB, passed to FBD, LLC by "operation of law."   See also Koppers Indus., Inc. v. N. River Ins. Co., No. Civ.A.94-1706, 1996 WL 33577709, at *6 n.4 (W.D. Pa. March 5, 1996), *aff'd*, 103 F.3d 113 (3d Cir. 1996) (denying plaintiff's request that court "not address the merits of [its] potential liability as a successor-in-interest" and to "simply hold that [it] is entitled to coverage . . . because [the underlying plaintiff] has *alleged*" successor liability, because courts holding that insurance coverage transfers by operation of law "have based their

_____

[22] In fact, Travelers asserts, and FBD, LLC does not contest, that it continued to defend SFB in actions similar to the underlying litigation after the transfer of assets to FBD, LLC. Document No. 13 at 5.  Though SFB's dissolution years subsequent to the Asset Purchase Agreement may nonetheless avoid this specific problem of double coverage going forward, this is mere happenstance.  There is no principled basis upon which coverage, which did not extend to FBD, LLC under the "operation of law" theory during SFB's existence, should years later suddenly be conferred upon FBD, LLC by "operation of law" solely by virtue of SFB's unrelated subsequent dissolution.  FBD, LLC has cited no authority, and the Court is aware of none, that supports such an argument.

decision on the potential liability that a successor corporation faces . . ." (emphasis in original)).

3. _Whether FBD, LLC is a potentially liable party in the underlying asbestos lawsuits_

Federal courts sitting in diversity jurisdiction apply the choice of law rules of the forum state. <u>Cantu v. Jackson Nat'l Life Ins. Co.</u>, 579 F.3d 434, 437 (5th Cir. 2009). Texas courts apply the law of the state with the "most significant relationship" to the dispute unless a contract with a valid choice-of-law clause applies. <u>Lockheed Martin Corp. v. Gordon</u>, 16 S.W.3d 127, 133 (Tex. App.--Houston [1st Dist.] 2000, pet. denied) (citing <u>Duncan v. Cessna Aircraft Co.</u>, 665 S.W.2d 414, 421 (Tex. 1984); <u>Gutierrez v. Collins</u>, 583 S.W.2d 312, 319 (Tex. 1979)). "Under Texas law, the buying and selling corporations' purchase agreement's choice of law provision controls the applicability of successor liability doctrines." <u>Escalon v. World Group Sec., Inc.</u>, No. 5:07-CV-214-C, 2008 WL 5572823, at *8 (N.D. Tex. Nov. 14, 2008) (citing <u>Lockheed</u>, 16 S.W.3d at 133-34).

Here, the parties to the Asset Purchase Agreement, in which Plaintiff FBD, LLC was the buyer, agreed that the Agreement and the rights and obligations of the parties thereunder "shall be governed by and construed according to the laws of the State of Texas . . . ." The parties also agreed expressly to submit "to the non-exclusive jurisdiction of all federal and state courts located in

13

the State of Texas in connection with any action brought to enforce, or otherwise relating to, this Agreement . . . ."  FBD, LLC filed the instant case against Defendants in Texas state court, and Defendants removed it based on diversity jurisdiction.  The choice-of-law clause in the Asset Purchase Agreement is valid and governs interpretation of the Agreement.  Indeed, FBD, LLC would have had good reason to bargain for an interpretation and adjudication of this issue under Texas law because of the very rare circumstances in Texas in which a business entity purchasing only assets can be held liable for the seller's presale production activities.  *See* Lockheed, 16 S.W.3d at 139 ("Texas strongly embraces the non-liability rule.  To impose liability for a predecessor's torts, the successor corporation must have expressly assumed liability.").

Texas recognizes only two circumstances in which a successor business that purchases only the assets of another business acquires liability for the seller's pre-sale production activities: (1) the successor expressly agrees to assume liability; or (2) the acquisition results from a fraudulent conveyance to escape liability for the debts or liabilities of the predecessor. Lockheed, 16 S.W.3d at 134-35 & n.6 (citing TEX. BUS. CORP. ACT ANN. art. 5.10(B)(2) (Vernon Supp. 2000); Griggs v. Capitol Mach. Works, 690 S.W.2d 287, 294 (Tex. App.--Austin), *writ ref'd n.r.e. per*

*curiam*, 701 S.W.2d 238 (Tex. 1985); RESTATEMENT (THIRD) OF THE LAW OF TORTS, PRODUCTS LIABILITY § 12 (1998)).[23]

It is uncontested that FBD, LLC did not expressly agree to assume the pre-sale asbestos liabilities of the former FBD, Inc.[24] Indeed, in its complaint, "FBD, LLC denies that it is the successor to FBD, Inc. and suggests that it has been made a defendant [in the underlying suits] in error as it clearly did not assume liability for any of FBD, Inc.'s pre-acquisition activities."[25]  The above-referenced Texas statutory provisions also make plain that Texas does not subscribe to the rule of "product-line successor liability" that the Ninth Circuit found was the law in California and was determinative in <u>Northern Insurance</u>.  Furthermore, there is no allegation and no summary judgment evidence that the Asset Purchase Agreement was a fraudulent conveyance.  Thus, the summary judgment record establishes as a matter of law that FBD, LLC, both under terms of the Agreement and under Texas law, does not stand in

---

[23] The Texas Business Corporation Act was re-codified last year, but the prior statute (which is substantially unchanged on this point) governs this case.  *See* TEX. BUS. ORGS. CODE ANN. §§ 401.001(1); 402.010 (Vernon 2009) (noting that provisions apply to "a transaction consummated by an entity after" January 1, 2010); *see also* TEX. BUS. ORGS. CODE ANN. § 402.014 ("Except as expressly provided by this title, this code does not apply to an action or proceeding commenced before [January 1, 2010].  Prior law applies to the action or proceeding."); *compare* TEX. BUS. CORP. ACT. ANN. art. 5.10(B)(2) *with* TEX. BUS. ORGS. CODE ANN. § 10.254(b).

[24] Asset Purchase Agreement at 6-7; Document No. 13 at 4; Document No. 24 at 4.

[25] Document No. 1, ex. B at 5.

15

the place of the former FBD, Inc. with respect to these pre-sale potential liabilities.[26]   Accordingly, because there is no showing--and no evidence sufficient to raise even an issue of fact--that FBD, LLC could be subject to potential liability for the former FBD, Inc.'s presale asbestos liability, FBD, LLC does not qualify for a right to a defense from Travelers by "operation of law" even if Texas law should recognize that theory of insurance coverage.  It follows that under the uncontroverted facts of this case, no decision is required to be made on whether Texas--in a different case where the buyer might be shown to have actual liability for pre-sale liabilities of the seller--would or would not adopt the "operation of law" theory for which FBD, LLC argues.

III.  <u>Order</u>

Accordingly, it is

ORDERED that Defendants The Travelers Indemnity Company, Travelers Casualty and Surety Company, and Travelers Casualty and

---

[26] In its brief, FBD, LLC in a footnote states that it "reserves its right to argue that the laws of another state may apply with respect to certain of the issues involved in this proceeding.  For instance, the law of the State of West Virginia may determine whether FBD, LLC can be held liable as FBD, Inc.'s successor in the various lawsuits filed in West Virginia . . . ." Plaintiff does not explain this equivocal "reservation," but under the facts of this case it appears that FBD, LLC as an asset purchaser would likewise have no liability under West Virginia law for the presale asbestos liabilities of the seller.  *See* <u>Jordan v. Ravenswood Aluminum Corp.</u>, 193 W.Va. 192, 455 S.E.2d 561 (1995).

Surety Company of America's Motion for Summary Judgment (Document No. 13) is hereby GRANTED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, this __7th__ day of April, 2010.


                                    _____
                                         EWING WERLEIN, JR.
                                  UNITED STATES DISTRICT JUDGE

17